FILED
2013 Jan-25 PM 01:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ANGEL SUMMERS LYNCH,   ) | |
| ) | |
| **Claimant,**   ) | |
| ) | |
| vs.   ) | Case No. CV-11-S-3335-E |
| ) | |
| MICHAEL J. ASTRUE,   ) | |
| Commissioner, Social Security   ) | |
| Administration,   ) | |
| ) | |
| **Defendant.**   ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant, Angel Summers Lynch, commenced this action on September 15, 2011, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits.  For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Briefs are not required in social security appeal cases,[1] and claimant did not file a supporting brief. Nevertheless, this court has carefully reviewed the entire record in reaching its determination of the merits of claimant's appeal.

Claimant alleged that she became disabled on May 31, 2007, due to anxiety, depression, high blood pressure, cholesterol, diabetes, a growth on her kidney, kidney stones, breathing problems, and irregular heartbeat.[2] The ALJ concluded that only claimant's hypertension and anxiety constituted "severe impairments," and that claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. Despite claimant's severe impairments, the ALJ found that she retained

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following limitations: never climb ladders/ropes/scaffolds; avoid concentrated exposure to heat, cold and noise; and avoid all exposure to hazardous conditions including unprotected heights and dangerous machinery. In addition the claimant would have the following mental limitations: simple, routine tasks involving no more than simple, short instructions and simple work-related decision[s] with few work place changes (unskilled work); only simple, work-related decisions with few work place changes (stress); and only casual interaction with the general public, co-workers and supervisors.[3]

---

[1] *See* doc. no. 7 (briefing letter).
[2] Tr. 165.
[3] Tr. 18-19 (alteration supplied).

2

The ALJ then relied upon vocational expert testimony to determine that a person of claimant's age, education, work experience, and residual functional capacity would be able to perform jobs that exist in significant numbers in the national economy.[4]  Accordingly, the ALJ found that claimant had not been under a disability, as defined by the Social Security Act, from May 31, 2007, through the date of the administrative decision.[5]

Upon review of the entire record, the court concludes that the ALJ's findings were supported by substantial evidence and in accordance with applicable law.

First, the record supports the ALJ's determination that claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  Indeed, it appears that claimant did not even make such a claim during the administrative proceedings.

Further, the court concludes that the ALJ properly determined claimant's residual functional capacity.  He properly considered claimant's subjective complaints of limitations due to lack of energy, headaches, nausea, anxiety, and inability to get along with people. To demonstrate that a subjective symptom renders her disabled, claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged

---

[4] Tr. 24-25.
[5] Tr. 25.

[symptoms] arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged [symptoms].'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)) (alteration supplied). "After considering a claimant's complaints of [subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)) (alteration supplied). If an ALJ discredits a claimant's testimony regarding subjective limitations, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).[6]

The ALJ properly applied these standards. He found that claimant's medically determinable impairments could reasonably be expected to cause the symptoms she alleged, but that claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were

---

[6] Most of the cases cited in the textual paragraph accompanying this footnote address a claimant's subjective complaints of pain. Pain is not as much of an issue in this case as claimant's other subjective symptoms, including fatigue and anxiety. But the standard is the same for evaluating pain as it is for other subjective limitations, so the cases cited above are equally applicable to claimant's allegations in this case.

inconsistent with the ALJ's residual functional capacity finding.[7] The ALJ also adequately articulated reasons for not crediting claimant's testimony on pain. Specifically, he reasoned that claimant's allegations were not supported by the medical evidence of record, claimant's reported daily activities, claimant's history of conservative treatment, or claimant's unpersuasive appearance and demeanor during the administrative hearing. To the extent any of claimant's pain allegations *were* credible, they were incorporated into the residual functional capacity finding.

Substantial evidence supports the ALJ's conclusions. The medical records generally reflect that claimant has had some health problems, including trouble controlling her diabetes and blood pressure, but that the problems were no more than mild to moderate in nature. The medical reports in the record also are consistent with the ALJ's findings. Dr. Robert G. Summerlin, a consultative psychological examiner, reported that claimant was well-oriented and able to communicate and concentrate adequately. She possessed normal thought processes and low average intelligence. "Her affect was reflective of *mild* anxiety."[8] Dr. Summerlin assessed claimant with a GAF score of 60-70, indicating mild to moderate emotional symptoms, and recommended that she follow up with outpatient mental health counseling.[9] Dr.

---

[7] Tr. 22-23.
[8] Tr. 366 (emphasis supplied).
[9] Tr. 367.

Michael Kline, claimant's treating urologist, wrote in a letter to the Disability Determination Service that, while claimant had been hospitalized for an inflammatory mass on her kidney, her condition had resolved and she had "no disability related to her urological status."[10] Dr. Robert Estock, the stage agency psychological examiner, assessed claimant with an anxiety disorder, dependent and borderline personality disorder, and periodic alcohol abuse. With regard to claimant's functional limitations, Dr. Estock indicated that claimant had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. He stated that the medical evidence did not support the level of functional restrictions alleged by claimant, and that claimant's statements were only partially credible.[11] On a Mental Residual Functional Capacity Assessment form, Dr. Estock indicated that claimant suffered moderate limitations in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; interact appropriately with the general public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. She was not significantly limited in her ability to:

---

[10] Tr. 369.
[11] Tr. 371-84.

remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.  In his concluding narrative, Dr. Estock stated:

> Claimant is able to remember locations and work like procedures.
>
> She is able to understand, remember and carry out short simple instructions.
>
> She may have moderate difficulty handling more detailed instructions but likely can handle even these if they are broken down into simple 1-2 step tasks and she is given adequate rehearsal.
>
> Claimant is able to maintain attention sufficiently to complete simple 1-2 step tasks for periods of up to 2 hours without special

supervision or extra rest periods.[12]

Dr. C.K. Jin, a consultative physical examiner, noted all of claimant's medical problems, including hypertension, diabetes, palpitations, hyperlipidemia, hypothyroidism, depression, allergic rhinitis, gastroesophageal reflux disease, and allergic dermatitis. Despite these conditions, claimant's prognosis was "fair," and Dr. Jin's conclusion was that claimant "has multiple problems, mainly sugar trouble. Otherwise, nothing really remarkable. The blood pressure is fairly well controlled. The heart is well controlled. Otherwise, nothing really serious except for allergic rhinitis."[13] None of these statements from treating and examining physicians support a finding of greater limitations than those reflected in the ALJ's residual functional capacity finding.

The ALJ's conclusions about claimant's daily activities, treatment history, and demeanor also are supported by substantial evidence. Claimant's daily activities are limited, but not as severely as might be expected of a person with claimant's alleged symptoms. Moreover, claimant has received only conservative treatment for her conditions, including her alleged mental impairments. She did not even choose to act upon the suggestion of her physician and the consultative examiner that she follow up with outpatient counseling at the mental health clinic. Finally, the ALJ was

---

[12] Tr. 393-95.
[13] Tr. 399-400.

entitled to make a judgment about claimant's credibility based upon her demeanor during the administrative hearing, especially considering that the ALJ was careful to note that his observation about claimant's demeanor was "only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity."[14] *See Macia v. Bowen,* 829 F.2d 1009, 1011 (11th Cir. 1987) ("The ALJ is not prohibited 'from considering the claimant's appearance and demeanor during the hearing.'") (quoting *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir.1985)).

After determining claimant's residual functional capacity, the ALJ properly used vocational expert testimony to ascertain whether there were jobs existing in significant numbers in the national economy that claimant could perform. The ALJ's hypothetical question to the vocational expert included all of the functional limitations that are supported by the record, and there is no reason to question the vocational expert's findings.

In conclusion, the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

---

[14] Tr. 23.

DONE this 25th day of January, 2013.

```
                                    /s/ Lynwood Smith
                                    _____
                                    United States District Judge
```